O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5707 PSG (PJWx) | Date | August 5, 2009 |
|---|---|---|---|
| Title | AT&T Intellectual Property II, L.P. v. Toll Free Yellow Pages Corp. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):     Attorneys Present for Defendant(s):

Not Present                             Not Present

**Proceedings:**     (In Chambers) Order Denying Plaintiffs' Ex Parte Application

Pending before the Court is Plaintiffs' ex parte application for temporary restraining order.  The Court finds the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.  After considering the moving papers, the Court DENIES Plaintiffs' application.

I.     Background

According to AT&T Intellectual Property II, L.P., YellowPages.com LLC, and YellowPages.com, Inc. (collectively, "Plaintiffs"), in the spring of 2007, they became aware that Toll Free Yellow Pages Corporation ("TFYP") and its affiliates, which includes Internet Labz, Inc., Yellowpages.travel LLC ("YP.T"), Yellow Pages Corporation, Bobby Kalili ("Kalili"), and Michael Thompson ("Thompson") (collectively, "Defendants"), were using a number of Plaintiffs' trademarks on web pages Defendants operated.  Also, Defendants' web pages linked to various web pages owned and operated by Plaintiffs, creating the impression that Defendants were affiliated with Plaintiffs when, in fact, they were not.  Around the same time, Plaintiffs also became aware that Defendants were attempting to auction off a variety of domain names incorporating Plaintiffs' marks.

Then, in March of 2008, Plaintiffs became aware that TFYP and/or YP.T had issued a false and misleading press release entitled "AT&T Offers All New Suite of Services with Yellow Pages Branding," which was distributed through Business Wire.  This press release was false and misleading because it stated that YellowPages.travel was a service offered through or affiliated with AT&T when, in fact, it was not.  Shortly thereafter, in June of 2008,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5707 PSG (PJWx) | Date | August 5, 2009 |
|---|---|---|---|
| Title | AT&T Intellectual Property II, L.P. v. Toll Free Yellow Pages Corp. | | |

YellowPages.travel purported to offer an "Affiliate Program by AT&T." However, AT&T never authorized this program.

Defendants' alleged unlawful use of Plaintiffs' marks continued into 2009. For instance, on June 25, 2009, Plaintiffs received notice of an email being distributed by "Robert Roth," whom Plaintiffs suspect is Kalili's alias. That email implied that Plaintiffs and YP.T are acting in concert when, in fact, they are not. Then, on July 23, 2009, Thompson sent Yellowpages.com's real estate broker a request for a quote for a lease in a building currently occupied by Yellowpages.com. In that request, Thompson, presumably in an attempt to secure a better deal on the lease, impersonated Yellowpages.com and created a false impression that YP.T is part of or is otherwise affiliated with AT&T.

The most recent allegedly actionable conduct of Defendants occurred in late July of 2009. That month, Defendants used confidential AT&T information to contact a large number of Plaintiffs' current employees, soliciting their employment with YP.T.

In light of the foregoing, Plaintiffs, on August 4, 2009, filed a complaint for trademark infringement, false designation of origin, false advertising, dilution, cyberpiracy, unfair competition, common law misappropriation, violation of California's anti-phishing statute, violation of California's trade name statute, and interference with prospective business relations. That same day, they filed the present *ex parte* application.

II.     Discussion

The law on ex parte applications is well-settled in this circuit. In order to justify ex parte relief, the evidence must establish two things. First, that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). Second, the moving party must also establish that she is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect. *Id.* If there was any doubt as the limited circumstances under which parties should file ex parte applications, this Court's Standing Order makes clear that "[e]x parte applications are solely for extraordinary relief." *Standing Order*, ¶ 10.

In light of the foregoing explication of the governing legal standard, it should come as no surprise to Plaintiffs that the Court denies their application. Plaintiffs have known of Defendants' allegedly unlawful conduct for over two years now. Yet, for reasons unexplained to

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-5707 PSG (PJWx) | Date | August 5, 2009 |
|---|---|---|---|
| Title | AT&T Intellectual Property II, L.P. v. Toll Free Yellow Pages Corp. | | |

the Court, they have waited until now to seek relief for Defendants' allegedly unlawful conduct. Now the Court recognizes that there is evidence that Defendants have recently increased their allegedly unlawful conduct. But there is also evidence that such conduct has been occurring intermittently for over a year now. Yet, without reason or explanation, Plaintiffs have waited until now to file this ex parte application.

As Judge Edwards noted in *Mission Power Engineering*, to justify ex parte relief, applicants must demonstrate why they should be allowed to "go to the head of the line in front of all other litigants and receive special treatment." *Mission Power Eng'g*, 883 F. Supp. at 492. That showing is noticeably absent from Plaintiffs' application. Moreover, "[e]x parte applications are not intended to save the day for parties who have failed to present requests when they should have . . . ." *Id.* As noted above, despite being made aware of Defendants' allegedly unlawful conduct in 2007, Plaintiffs have failed to explain why they have waited until August of 2009 to bring this application. Certainly it could have been brought months, if not years, ago. For these reasons, the Court finds that Plaintiffs have failed to demonstrate that ex parte relief is justified under the present circumstances.

III.  Conclusion

Based on the foregoing, the Court DENIES Plaintiffs' ex parte application.

**IT IS SO ORDERED.**