JENNIFER LANTZ (SBN 202252)
STEVEN M. LEVITAN (SBN 148716)
INCHAN KWON (SBN 247614)
HAYNES AND BOONE, LLP
2033 Gateway Place, Suite 400
San Jose, California 95110
Phone:      (408) 392-9250
Facsimile: (408) 392-9262
Email:      jennifer.lantz@haynesboone.com
            steve.levitan@haynesboone.com
            inchan.kwon@haynesboone.com

Attorneys for Plaintiffs
AT&T Intellectual Property II, L.P.,
YellowPages.com, LLC, d/b/a AT&T
Interactive and YellowPages.com, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION, ROYBAL FEDERAL BLDG.

| | |
|---|---|
| AT&T Intellectual Property II, L.P., YellowPages.com, LLC, d/b/a AT&T Interactive, and YellowPages.com, Inc.<br><br>     Plaintiffs,<br><br>     v.<br><br>Toll Free Yellow Pages Corp., YellowPages.travel, LLC, Internet Labz, Inc., Yellow Pages Corporation, Bobby Kalili, and Michael Thompson; and DOES 1 to 10 inclusive,<br><br>     Defendants. | Case No. CV 09-5707 PSG (PJWx)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS BOBBY KALILI AND YELLOWPAGES. TRAVEL, LLC'S EX PARTE APPLICATION TO SHORTEN TIME FOR HEARING ON MOTION TO VACATE OR MODIFY PRELIMINARY INJUNCTION**<br><br>Date: TBD<br>Time: TBD<br>Before: Hon. Philip S. Gutierrez<br>Location: Room 790 |

Plaintiffs AT&T Intellectual Property II, L.P., YellowPages.com, LLC d/b/a/ AT&T Interactive, and YellowPages.com, Inc. ("Plaintiffs") hereby oppose Defendants Bobby Kalili and YellowPages.travel, LLC's ("Defendants") Ex Parte Application to Shorten Time for Hearing on Motion to Vacate or Modify Preliminary Injunction (the "Ex Parte Application").  Plaintiffs will respond more fully to the points raised in Defendants' Motion to Vacate or Modify Preliminary Injunction (the "Motion to Vacate"), which Defendants have confusingly conflated with their Opposition to Plaintiffs' Motion for an Order to Show Cause (the "Show Cause Motion"), within the time set for an opposition by the Local Rules, unless the Court sets another time for the Opposition to be due.

"Ex parte applications are solely for extraordinary relief."  (Court's Standing Order ¶ 7.)  Though the party opposing an ex parte application "does have a chance to be heard, the parties' opportunities to prepare are grossly unbalanced.  Often, the moving party's papers reflect days, even weeks, of investigation and preparation; the opposing party has perhaps a day or two."  *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995).  Thus, to justify ex parte relief, applicant must show that (1) its "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and (2) it is "without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect."  *Id.* at 492.  Applicant "must show why [it] should be allowed to go to the head of the line in front of all other litigants and receive special treatment."  *Id.*

Defendants' Ex Parte Application should be denied for at least the following four reasons.

First, Defendants give no reason for not opposing the motion for preliminary injunction when it was originally filed, and have inexcusably delayed in seeking to vacate or modify the injunction, thus creating their own perceived need for the

1

extraordinary relief of an order shortening time.  Defendants had ample opportunity to oppose Plaintiffs' Motion for Preliminary Injunction, properly noticed under the Court's rules for hearing on September 21, 2009, but chose not to.  "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have . . . ."  *See Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. at 493 (citation omitted).  The Preliminary Injunction Order issued September 21, 2009, and Defendants were served with the Court's Preliminary Injunction Order on September 24, 2009.  (*See* Lantz Decl. in Supp. of Show Cause Motion (previously filed) ¶ 5, Ex. D.)  Now, more than two months after the injunction issued—after ignoring the case and the Court's deadlines (such as the deadline to Answer)—Defendants seek to cut to the head of the line without explaining why they waited this long to move to vacate or modify the injunction.  Under controlling authority, Defendants' inexcusable delay alone mandates denial of their Ex Parte Application. *See Mission Power Eng'g Co.*, 883 F. Supp. at 490.

Second, Defendants have failed to show they will be irreparably prejudiced absent ex parte relief.  As discussed above, to the extent Defendants would be prejudiced by the hearing of their motion on the regular motion calendar, Defendants themselves created that prejudice by not timely filing their motion. Other than their arguments in support of their Motion to Vacate, Defendants offer no reason why they would be prejudiced if their Motion to Vacate is heard on the Court's regular motion calendar, as opposed to December 14, 2009 (the date Defendants seek through their Ex Parte Application for the motion to be heard). Indeed, Defendants are further attempting to "jump to the head of the line" by putatively noticing the motion for an unavailable hearing date—December 21, 2009. And Defendants fail to submit any evidence that they have suffered or will suffer any particular prejudice if their Motion to Vacate is not heard on an expedited basis. Rather, Defendants only state—without evidentiary support—that "irreparable harm

2

to the good will in Yellowpages.travel, LLC's start-up internet business *would* result if Plaintiffs' preliminary injunction were permitted to remain in force."  (Defs' Ex Parte App'n to Shorten Time at 3 (emphasis added).)  Under controlling authority, Defendants' failure to show they will be irreparably prejudiced absent ex parte relief mandates denial of their Ex Parte Application.  *See Mission Power Eng'g Co.*, 883 F. Supp. at 490.

Third, Defendants' Motion to Vacate is an attempt to distract the Court from Defendants' flagrant and continuing violation of the Court's Preliminary Injunction Order.  Defendants' Motion to Vacate should be heard *after* resolution of Plaintiffs' Show Cause Motion, filed on November 5, 2009 and noticed for hearing December 14, 2009.  As explained in the Memorandum of Points and Authorities in Support of Plaintiffs' Show Cause Motion, Defendants have committed numerous violations of the Preliminary Injunction Order.  While Defendants appear to have remedied some of the specific violations cited by Plaintiffs in their Show Cause Motion, Defendants continue to violate several provisions of the preliminary injunction.  For example, Defendants continue to make statements on the yellowpages.travel website that claim or imply an affiliation with or sponsorship by AT&T and Plaintiffs' yellowpages.com site in violation of paragraph 1 of the injunction.  (Decl. of Jennifer M. Lantz in Supp. of Pls.' Opp'n to Defs.' Ex Parte Motion ("Lantz Decl.") Ex. A at 3, 5, 7.)  Defendants also continue to mislead consumers into believing that yellowpages.travel is offered by a company that has been providing business directories for 100 years in violation of paragraph 4 of the preliminary injunction.  (*Id.* Exs. A at 5, B at 9, 11, 12.)  Also, Defendants continue to fail to comply with the disclaimer requirement in paragraph 5 of the injunction.  (*See, e.g., id.* Ex. C.)  Defendants' unclean hands in violating the preliminary injunction—an injunction that Defendants now seek to have modified or vacated on an expedited schedule— forecloses the relief Defendants seek in their Ex Parte Application and the relief

3

1   Defendants seek in their Motion to Vacate.  *See Jarrow Formulas, Inc. v. Nutrition*
2   *Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) ("The unclean hands doctrine 'closes
3   the doors of a court of equity to one tainted with inequitableness or bad faith relative
4   to the matter in which he seeks relief.'") (citation omitted).

5          Finally, as will be set forth more fully in Plaintiffs' Opposition to Defendants'
6   Motion to Vacate, Defendants are not likely to succeed on the merits of their
7   defense that "yellow pages" is generic.[1]  Defendants' reliance on cases in which
8   Defendants allege the court held that "yellow pages" is generic is misplaced.  (*See*
9   Mem. in Supp. of Defs.' Motion to Vacate or Modify Prelim. Inj. at 8-10 (citing
10  *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143 (9th Cir.
11  1999); *AmCAN Enters., Inc. v. Renzi*, 32 F.3d 233 (7th Cir. 1994).)  These cases,
12  which are 10 to 15 years old, are inapposite because genericness is a question of
13  fact[2] and these cases involved different parties and different marks from those at
14  issue in the instant case.  Specifically, these cases addressed the issue of whether
15  unregistered "yellow pages" marks used in connection with local print business
16  directories were generic.  *See Filipino Yellow Pages, Inc.*, 198 F.3d at 1147-48;
17  *AmCAN Enters., Inc.*, 32 F.3d at 234.  In both cases, the party asserting rights in a
18  "yellow pages" mark did not have a trademark registration for its "yellow pages"
19  mark and thus bore the burden of demonstrating that "yellow pages" was *not* generic
20  for local print business directories.  *Filipino Yellow Pages, Inc.*, 198 F.3d at 1146;
21  *AmCAN Enters., Inc.*, 32 F.3d at 234.  Here by contrast, Plaintiffs have numerous
22  registrations for their YELLOWPAGES marks (e.g., U.S. Reg. Nos. 2,207,898;

---

[1] This is the only defense specifically cited by Defendants in their Ex Parte
Application as constituting good cause for granting ex parte relief.  As will be
argued in Plaintiffs' Opposition to Defendants' Motion to Vacate at the appropriate
time, Defendants' other arguments for vacating or modifying the preliminary
injunction also lack merit.

[2] *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 929 (9th Cir.
2005) (citation omitted).

4

1   2,824,295; 2,999,407; 3,639,975; 3,639,976; 3,696,246; 3,715,627—most of which

2   postdate the cases Defendants rely on).    Thus, Plaintiffs are entitled to a

3   presumption of validity of these YELLOWPAGES marks and *Defendants* bear the

4   burden of proving genericness.  *See Filipino Yellow Pages, Inc.*, 198 F.3d at 1146

5   (citing 15 U.S.C. § 1057(b)).  Also, Plaintiffs seek to enjoin the use of "yellow

6   pages" in connection with Internet-based services, not local print business

7   directories.   Whether "yellow pages" alone is generic for local print business

8   directories has no bearing on whether Plaintiffs' composite marks are generic for

9   Internet-based services or whether Defendants should be enjoined from falsely

10   associating their services with Plaintiffs and Plaintiffs' products, services, and marks

11   (including numerous AT&T marks not containing "yellow pages" (*see, e.g.*, Compl.

12   ¶¶ 37-44)).

13        Defendants are also not likely to succeed on the merits of their genericness

14   defense because they have admitted through their pre- and post-litigation words and

15   conduct that "yellow pages" in fact is not generic for the services at issue in this

16   case.   For example, in an October 15, 2007 press release on their website,

17   Defendants stated that the yellowpages.travel domain "is quite unique in that it

18   represents a multibillion dollar brand, 'YellowPages'" and that "AT&T is known for

19   its very popular YellowPages brand in the United States."  (Lantz Decl. Ex. D at

20   17.)  This is an explicit pre-litigation admission that Plaintiffs' YELLOWPAGES

21   marks are not generic and that consumers associate the YELLOWPAGES brand

22   exclusively with AT&T.  Similarly, Defendants have touted the value of their own

23   YELLOWPAGES.TRAVEL brand (*id.* Ex. E at 18), have applied to register two

24   variations on YELLOWPAGES.TRAVEL (U.S. Serial Nos. 77/196,083;

25   77/780,079), have submitted declarations signed by Bobby Kalili in connection with

26   those applications stating that "he[] believes the applicant to be the owner of the

27   trademark/service mark sought to be registered" (*see* Lantz Decl. in Supp. of Show

28

Cause Motion (previously filed) ¶¶ 3, 16; *id.* Exs. B at 44, O at 173), and have accused Plaintiffs of infringing their YELLOWPAGES.TRAVEL mark (Defs.' Countercls. ¶¶ 73-97).   This conduct amounts to an admission by Defendants that "yellow pages" is not generic as applied to the parties' marks and services at issue in this case.

For at least the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Ex Parte Application.


DATE: December 1, 2009              HAYNES AND BOONE, LLP


                                    /s/ Jennifer M. Lantz
                                    JENNIFER M. LANTZ
                                    Attorneys for Plaintiffs
                                    AT&T Intellectual Property II, L.P.,
                                    YellowPages.com, LLC, d/b/a AT&T
                                    Interactive, and YellowPages.com, Inc.